## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

CECILIA NICHOLAS,                            )
                                             )
       Plaintiff,                        .
                                             )    No. 3:10-CV-1565
     v.                                  )    Judge TJM/DEP
                                             )
CITY OF BINGHAMTON, NEW YORK,                )
and Binghamton Police Officers               )
CHARLES HARDER, JAMES MOONEY,                )
Capt. JOHN CHAPMAN,                          )
Chief JOSEPH ZIKUSKI                         )
         Defendants.                  )

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
MAY 1 8 2012
AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk - Binghamton

### SECOND Amended COMPLAINT

    1.    This is an action for money damages and equitable relief brought pursuant to 42 U.S.C. § 1983, and the common law and statutes of the State of New York.

    2.    Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

    3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

### Parties

    4.    Plaintiff CECILIA NICHOLAS is a resident of Binghamton, New York. Plaintiff is disabled within the meaning of the Americans With Disabilities Act and New York State law.

    5.    Defendant-Officer HARDER is a duly appointed and sworn Binghamton *police officer. At all times relevant to this complaint, he was acting in the course and scope of his employment, and under color of state law, ordinance and/or regulation. HARDER is sued in his individual capacity.

    6.    Defendant Officer James MOONEY is a duly appointed and sworn *Binghamton police officer. At all times relevant to this complaint, he was acting in the*

1

course and scope of his employment, and under color of state law, ordinance and/or regulation.

Mooney is sued in his individual capacity.

7. Defendant Captain John CHAPMAN is a duly appointed and sworn Binghamton police officer in the Internal Affairs Division. At all times relevant to this complaint, he was acting in the course and scope of his employment, and under color of state law, ordinance and/or regulation. Chapman is sued in his individual capacity.

8. Defendant Joseph ZIKUSKI is the Chief of the City of Binghamton Police Department. At all times relevant to this complaint, he was acting in the course and scope of his employment, and under color of state law, ordinance and/or regulation. Zikuski is sued in his individual capacity.

9. Defendant CITY OF BINGHAMTON is a municipal corporation, duly incorporated under the laws of the State of New York and is the employer and principal of HARDER, MOONEY, CHAPMAN and ZIKUSKI.

### Facts

10. On or about September 29, 2009, an NYSEG employee came to Plaintiff's residence at 52 Lathrop Avenue in Binghamton to shut off Plaintiff's gas service.

11. Plaintiff asked the NYSEG employee to call the police because Plaintiff was not in arrears on her utility payments and wanted to make a police report regarding the unauthorized shut off.

12. The NYSEG employee called police. Plaintiff waited in front of her home with the NYSEG truck. Approximately 20 – 30 minutes passed and plaintiff became chilled. The hood of the NYSEG vehicle was warm due to the engine idling so plaintiff climbed partially onto the hood to lean on it for warmth.

13. Defendant-Officer HARDER arrived. He sped to an abrupt halt in the middle of the street, parallel with the NYSEG vehicle.

14. Officer HARDER got out of his car and ran towards Plaintiff. Without first asking any questions, HARDER forcibly grabbed Plaintiff by the back of her pants and her arm and violently shook her and dragged her across her front lawn. Plaintiff had not resisted in any way, and was not combative or confrontational in any way.

15. Plaintiff was seized and not free to leave.

2

16.   Plaintiff had not committed any crime. Nor did HARDER have probable cause, reasonable suspicion or any other lawful basis to seize Plaintiff.

17.   During the dragging and shaking, Plaintiff told HARDER that she has Multiple Sclerosis and that he was hurting her, and asked him to stop. He continued yanking and dragging until he let go by pushing plaintiff onto her brick stairs.

18. On information and belief, a neighbor passing in her car noticed Officer Harder's violence toward plaintiff and was compelled to pull over, jump out of her car, and run up to Harder, yelling at him to stop.

19. Plaintiff was so shaken and dizzy that she had not noticed that neighbor's intervention. Plaintiff learned of it several days later while conversing with the neighbor.

20. Plaintiff remained seated on the brick steps and asked the officer his name. He replied "Charles Harder". Plaintiff asked him why he had hurt her .

21.   HARDER began accusing Plaintiff of being "out of control" and insisting she needed to go to the behavioral unit at the hospital.

22.   Plaintiff had not done anything to provoke this statement. Officer Harder grabbed at plaintiff's arms and began dragging her toward his vehicle, saying "Come on—you're going to CPEP NOW!"

23.   Officer Mooney arrived. Plaintiff begged Harder to stop dragging her and let her go to the back door to lock up the house. Plaintiff explained she has a service dog that needs to be cared for before she leaves.

24 Plaintiff's other neighbor arrived with her telephone in hand. Plaintiff requested to call her husband and recited his phone number for the neighbor to dial. Upon connecting to plaintiff's husband, the neighbor frantically urged him to hurry home, that it was an emergency.

25 Plaintiff had concern that her husband would become overly frightened by the frantic message the neighbor was relaying so she asked to speak with her husband to reassure him that it was not a dire emergency. Plaintiff explained that to him that NYSEG had shut off the gas and that she had called for the police to take a report. Plaintiff began to explain what officer Harder had just done and that Harder was insisting she had to go to the hospital.

26. One of the officers grabbed the phone from plaintiff's hands and turned away to talk.

3

27. Officer Mooney spoke briefly with the NYSEG employee. Plaintiff remained seated on front steps. The phone was returned to the neighbor.

28. Officer Mooney then asked plaintiff her name and date of birth. She answered fully and calmly. Again Harder began grabbing plaintiff's arms insisting she was going to the behavioral unit. Plaintiff pleaded to be allowed to tend to her service dog and lock up the house.

29. The officers conferred together, and allowed plaintiff, closely followed by Harder and Mooney to go down the driveway and into the yard. Plaintiff opened the back door and let her service dog out into the yard. The dog appeared very anxious and began guarding the plaintiff from the police. The dog followed plaintiff's command to come away from the officers. The dog also followed plaintiff's command to urinate and then stayed right beside her as she went into the house. The officers pushed right in behind plaintiff.

30. Plaintiff asked permission to use the bathroom, put in contact lenses and brush teeth and hair. She accomplished those tasks as efficiently as possible.

31. At all times plaintiff was respectful and courteous to the officers. Officer Mooney engaged plaintiff in some calm conversation. He inquired if plaintiff ever considered harming herself. She assured him with a smile that she would never harm the person she loves best. She assured him she had no history of psychiatric problems or drug or alcohol problems. Plaintiff discussed her work as an attorney for children in Family Court and explained that she had accompanied clients on several occasions to CPEP or to interview therapists in the course of providing legal representation.

32. Plaintiff explained that the year prior to being diagnosed with MS(2003), plaintiff had sought advisement at CPEP due to unusual feelings of lightheadedness and seeming panic attacks. Plaintiff was advised that she needed no psychiatric evaluation or treatment, that it was likely simply due to stress. Plaintiff has never required psychiatric treatment.

33. The officers inquired where plaintiff's husband works. When she explained he works an hour and a half away, they became very agitated.

34. Plaintiff explained she needed to take her morning meds and she proceeded to do so while the officers ignored her and whispered to each other. Plaintiff heard Officer

4

Mooney say to Harder "I think we can leave". Harder became agitated. He suddenly insisted he was taking plaintiff to CPEP immediately.

35. Harder demanded that plaintiff put on her coat. She complied.

36. As the officers began pushing her out the door, plaintiff asked to be allowed to give her service dog his medication. She explained he had a pancreatitis digestive condition that required daily medication. The officers laughed. She tried to explain it was serious and he would get sick without it.

37. Plaintiff requested that her service dog accompany her to the hospital. The officers scoffed and pushed plaintiff to the floor of the bathroom. Officer Harder said "How would you like us to put handcuffs on you?" Plaintiff became frightened and asked why they would do that?

38. Harder then snapped a handcuff on plaintiff's left wrist. It was so tight that plaintiff cried out in pain. The officers roughly grabbed at plaintiff's right arm and sneered to each other "maybe she wants them behind her back!" Then Harder snapped the right one on—so tight that plaintiff begged him to loosen them and showed him how the skin on her wrist was being torn.

39.   The handcuffs were extremely tight. Plaintiff stated that she was in pain and asked Harder to loosen them. Harder refused, and insisted they were fine. He jammed his fingers on the inside of plaintiff's wrist and yanked them, further injuring her wrist.

40. Officer Mooney suddenly looked worried and called for an ambulance.

41. Then Officer Harder and Mooney declared "we're going to take you out to the *front* to wait". The two officers dragged plaintiff roughly and rapidly by the still handcuffed arms, down the driveway to the front steps.

42. On the way down the driveway, plaintiff was stumbling and asked the officers to please slow down, that it was difficult to walk that fast. Harder replied "Don't give me that! I saw you walk before!"

43. Officer Mooney sat next to plaintiff on the front stairs. Officer Harder paced about. Approximately 15-20 minutes passed. The handcuffs continued to dig into the two sides of both wrists. Plaintiff's hands became numb.   A siren was heard and an ambulance passed by Lathrop Ave.

44. Officer Mooney removed the handcuffs just as the ambulance was

5

coming down the street. He said to plaintiff "Are you going to be good now?" Plaintiff noticed red marks on her wrists. Plaintiff told the ambulance attendants that police had handcuffed her. They expressed shock.

45. The medics questioned why Harder was demanding they go to Binghamton General. Harder loudly insisted they take plaintiff to "behavioral."

46. The ambulance attendants were very pleasant and courteous to plaintiff. Plaintiff conversed calmly with them as they checked her blood pressure en route to the hospital.

47. Upon arrival at the hospital, the medics wheeled plaintiff into the ER. When passing Officer Harder, he loudly told hospital staff in the presence of other patients and visitors "She's here for *behavioral*".

48. Hospital staff kept apologizing as plaintiff was subjected to a pat down search. Plaintiff had nothing in clothes pockets. Officer Harder had insisted plaintiff bring along her large purse. Nurses apologetically explained that the purse would be searched. Plaintiff lay on the stretcher as an officer removed the entire contents of the purse. He took nearly one hour to record every single item and piece of paper and every credit card, license, business cards, photographs of family, personal notes, notary public stamper, pens, make-up. He removed the entire contents of two wallets and examined each item, taking notes all the while.

49. Staff at the hospital determined that Plaintiff was not in need of psychological or psychiatric services. There were no grounds for a CPEP admission. They assisted with contacting NYSEG to restore plaintiff's utilities.

50. The unlawful detention of plaintiff lasted until approximately 6:30 PM.

51. Officer Charles Harder and Officer James Mooney acted willfully and wantonly, maliciously and with a conscious disregard and deliberate indifference to Plaintiff's rights.

52. As a direct and proximate result of the acts of Officers HARDER and MOONEY described above, Plaintiff suffered damages including loss of physical liberty, physical injury, permanent and disabling damage to wrist ligaments and tendons causing carpal instability and severe arthritic degeneration of the carpometacarpal joints on both wrists, permanent impairment in the use of both hands, pain and suffering, emotional distress, public embarrassment, damage to her professional and personal reputation,

6

damage to the health of her service dog and pecuniary damages including medical expenses, present and future expenses for adaptive equipment, physical therapy, and medical treatment for wrists and hands and exacerbation of multiple sclerosis.

53. On September 30, 2009, Plaintiff sent a letter to give Police Chief Zikuski immediate notice of the misconduct of Officer Harder and Officer Mooney.

54. Two days later, plaintiff was alerted by her security system to the presence of someone on her property.

55. Plaintiff saw Captain John Chapman getting into his vehicle that was parked across the street. Plaintiff inquired what his purpose was and whom he was seeking.

56. Captain Chapman approached plaintiff's porch and identified himself as being from Binghamton Police Internal Affairs.

57. Plaintiff discussed her encounter with Officers Harder and Mooney and explained how they terrorized and injured her.

58. Capt. Chapman inquired regarding the plaintiff's treatment or admission to the hospital and admitted he had tried unsuccessfully to acquire plaintiff's medical records.

59. Plaintiff explained that there had been no need for any CPEP treatment or admission and that she could not understand why officer Harder had attacked her immediately upon arriving.

60. Captain Chapman explained that his role was to make things better. Plaintiff expressed that although Officer Harder had committed a criminal assault upon her, she was not determined to have him criminally prosecuted as long as something was done to address his egregious bullying conduct.

61. He said he would contact witnesses and that he was told by the officers there was only one—the next door neighbor. Plaintiff said she believed there were more.

62. Soon thereafter, Plaintiff learned from conversation with neighbors that indeed there were several more witnesses. Plaintiff contacted Captain Chapman to ask if he had spoken with these several witnesses.

63. Captain Chapman became angry when Plaintiff asked if he had contacted other witnesses. He declared that of course he had. Plaintiff inquired as to their identities. Capt. Chapman refused to identify anyone, claiming they all were afraid of plaintiff and asked to remain anonymous.

7

64. Plaintiff is and has always been on good terms with all neighbors. Plaintiff has resided at the same address for twenty-two years.

65. On December 18, 2009  plaintiff  requested police records regarding the September 29, 2009 incident and any and all witness statements were specifically requested.

66. Capt. Chapman approved and signed the foil request on December 30, 2009  with no notation that anything whatsoever was excluded from disclosure.  No witness statements were provided.

67. During the last conversation plaintiff  had with Captain Chapman (mid October), he told plaintiff the officers acted in good faith when they forced plaintiff to go to CPEP. Plaintiff asked how bullying can be done in good faith.  He yelled at plaintiff that "Officer Harder is *not* a bully --- I know him very well and he is not a bully!"

68. Plaintiff found these defensive assertions peculiar, until it came to her attention that Captain Chapman and Officer Harder were the primary subjects of a prolonged criminal investigation that had just concluded the year prior.

69. Together they had used deadly force upon a mentally ill Binghamton resident who was armed only with a kitchen knife.  Although several able-bodied police officers were actively engaged at the scene to assist with securing this victim, Captain Chapman (at that time, Lieutenant) gave the order to shoot him.  Officer Harder complied, and Chapman and he shot the victim multiple times at close range, killing him.

70. This incident, along with the intensive investigation for the use of deadly force which ensued, created a traumatic bonding between officers Chapman and Harder, effectively nullifying the objectivity required to investigate and determine the reasonableness of Officer Harder's use of force upon plaintiff, or upon any other citizen for that matter.

## COUNT I
### (42 U.S.C. § 1983 – Excessive Force)

71.   Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

72.   Officers Harder and Mooney and violated Plaintiff's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the use of excessive

and unreasonable force.

WHEREFORE, Plaintiff asks that this Honorable Court:

    a) Enter judgment against HARDER, Mooney, Chapman and Chief Zikuski

    b) Award Plaintiff compensatory and punitive damages,

    c) Award attorneys' fees and costs, and

    d) Award any further relief that this Honorable Court deems just and equitable.


## COUNT II
### (42 U.S.C. § 1983 – Illegal Search of Person)

73.   Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

74.   Defendant-Officers searched Plaintiff's person and purse.

75.   Defendant-Officers did not have a search warrant, consent, exigent circumstances, or any other legal justification to search Plaintiff's person or purse.

76.   Searching Plaintiff's person and purse without any legal justification violated her Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable searches.

WHEREFORE, Plaintiff asks that this Honorable Court:

    a) Enter judgment against all Defendants

    b) Award Plaintiff compensatory and punitive damages,

    c) Award attorneys' fees and costs, and

    d) Award any further relief that this Honorable Court deems just and equitable.


## COUNT III
### (42 U.S.C. § 1983 - Illegal, warrantless invasion of private residence)

77. Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

78. Defendants Harder and Mooney violated Plaintiff's Fourth Amendment right to be secure in one's home and free from unreasonable invasion of privacy when defendants, having no warrant, no exigent circumstances and no consent of plaintiff homeowner, did willfully enter into plaintiff's private residence and remained within for approximately

9

one hour, all the while behaving in a disrespectful and bullying manner, intentionally inflicting emotional distress and culminating in defendants physical battery upon non-resisting plaintiff in her own home.

79. Defendants Harder and Mooney acted willfully, wantonly and with reckless disregard for plaintiff's constitutional right to be secure in her home.

WHEREFORE, Plaintiff asks that this Honorable Court:

    a) Enter judgment against all Defendants

    b) Award Plaintiff compensatory and punitive damages,

    c) Award attorneys' fees and costs, and

    d) Award any further relief that this Honorable Court deems just and equitable.


## COUNT IV
### (42 U.S.C. § 1983 – False Arrest)

80.   Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

Unreasonable seizure in violation of the fourth amendment was further exacerbated by the defendants purposeful and malicious neighborhood display of plaintiff in handcuffs, such display serving only to embarrass and humiliate plaintiff with no legitimate law enforcement purpose whatsoever.


WHEREFORE, Plaintiff asks that this Honorable Court:

    a) Enter judgment against Defendant-Officers Harder , Mooney and Capt. Chapman and Chief Zikuski

    b) Award Plaintiff compensatory and punitive damages,

    c) Award attorneys' fees and costs, and

    d) Award any further relief that this Honorable Court deems just and equitable.


## COUNT V
### (42 U.S.C. § 1983 – *Monell* Claim Against the City of Binghamton)

10

81.    Plaintiff realleges paragraphs 1 through 70 and the above counts as if fully set forth herein.

82.    The acts of Defendants' described in Counts I,II,III,IV,VII and VIII were done pursuant to and as a result of the following unconstitutional municipal customs, practices and policies in the CITY OF BINGHAMTON:

 - failure to properly train and supervise police officers in the use of force and arrest procedures.

 - failure to adequately investigate allegations of police misconduct and discipline police officers ; pervasive tolerance of constitutionally offensive conduct.

83.    These municipal polices, ratified by Chief Zikuski, caused Binghamton police officers, including Harder and Mooney and Chapman, to believe that use of excessive force and seizing civilians without probable cause were actions within their discretion, and further that any complaints of misconduct would not be meaningfully investigated. These policies had the foreseeable result that officers would falsely arrest people and use excessive force in the performance of their duties.

84.    As a direct and proximate result of the above-described municipal polices, customs and practices, Plaintiff suffered deprivation of her Fourth Amendment rights, as guaranteed by the Fourteenth Amendment.

WHEREFORE, Plaintiff asks that this Honorable Court:

 a) Enter judgment against CITY OF BINGHAMTON,

 b) Award Plaintiff compensatory and punitive damages

 c) Award attorneys' fees and costs, and

 d) Award any further relief that this Honorable Court deems just and equitable.


## COUNT VI

### Supervisor Liability Under 42 USC § 1983

85. Plaintiff realleges paragraphs 1-70 as if set forth fully herein.

86. Joseph Zikuski holds the position of Binghamton's Chief of Police and has responsibility for assignment, supervision and training of officers.

87. As Chief of Police, Joseph Zikuski is responsible for ensuring that the Binghamton

police force, as a state accredited law enforcement agency, maintains compliance with the accreditation standards mandated by the New York State Office of Public Safety for Law Enforcement Agency accreditation.

Said accreditation emphasizes a structured and transparently accountable Internal Affairs Division and process, requiring strict compliance with procedures that safeguard the rights of citizens and provides an effective method to address citizen complaints.

88. Chief Zikuski had knowledge of prior citizen mistreatment complaints concerning the defendant officers and others under his control and supervision.

89. Mishandling of arrestees and questionable conduct toward citizens, particularly those with disabilities, was pervasive and known to Chief Zikuski.

90. Failure to train, supervise and/or discipline the subordinates created an unreasonable risk of misconduct and harm toward the citizenry, as did failure to adequately monitor the Internal Affairs Division for accreditation standard compliance.

91. Chief Zikuski's assignment and retention of Captain Chapman in Internal Affairs, and assignment to him of investigating complaints of excessive force so soon after Chapman's questionable use of deadly force, evidences a deliberate indifference and callous disregard for protecting the rights of the citizenry with whom his officers interact.

92. Chief Zikuski's actions promote an atmosphere of tolerance and indifference toward police misconduct and corrupt the effectiveness of the citizen complaint process.

93. There is a causal nexus that affirmatively links these individual actions and omissions to the constitutional and civil rights violations suffered by the plaintiff.

94. Captain John Chapman has supervisory responsibility particularly regarding complaints of police mistreatment or rights violations.

95. Capt. Chapman demonstrates deliberate indifference for constitutional and legal restraints upon the conduct of subordinate officers by failing to keep adequate written records of complaints, deliberately avoiding eyewitness contact and interviews that may incriminate a subject of investigation and failing to create or provide to complainants a written report of findings.

96. The custom and pattern of lackadaisical investigation has promoted an acceptance of constitutionally offensive police conduct by Chapman's subordinates that is affirmatively linked to the violations suffered by the plaintiff.

12

WHEREFORE, Plaintiff asks that this Honorable Court:

   a) Enter judgment against Chief Zikuski and Captain Chapman

   b) Award Plaintiff compensatory and punitive damages,

   c) Award attorneys' fees and costs, and

   d) Award any further relief that this Honorable Court deems just and equitable

## COUNT VII

### (42 U.S.C. §1983 – FIRST AMENDMENT FREEDOM OF SPEECH)

97. Plaintiff realleges each paragraph in items 1 through 70 as if fully set forth herein.

98. Plaintiff engaged in constitutionally protected speech when she immediately protested to Officer Harder that he had used injurious and excessive force upon her.

99. Upon information and belief, Officer Harder became concerned that plaintiff would likely file a citizen complaint about his behavior, particularly after plaintiff asked for his name.

100. In **retaliation** and in an effort to chill and prevent plaintiff from further exercise of the right to voice protest and report police officer misconduct, Officer Harder falsely accused plaintiff of being "out of control".

101. Defendants Harder's and Mooney's malicious handcuffing and custodial arrest of plaintiff and attempt to force plaintiff's admission to the emergency psychiatric unit were done with the intent to shame and discredit the plaintiff, thereby diminishing the likelihood that plaintiff would report the officers' misconduct and/or reduce the credibility of any such report made by plaintiff.

102. That there was a psychiatric emergency was purely pretextual and no arrest pursuant to the mental hygiene law would have occurred but for retaliatory animus and constitutionally illegal purpose of chilling plaintiff's first amendment rights.

   WHEREFORE, Plaintiff asks that this Honorable Court:

   a) Enter judgment against all Defendants

   b) Award Plaintiff compensatory and punitive damages,

   c) Award attorneys' fees and costs, and

   d) Award any further relief that this Honorable Court deems just and equitable.

13

## COUNT VIII

(42 U.S.C. §12131   Title II of the Americans with Disabilities Act)

103.  Plaintiff's dog is a service animal for a disabled individual as those terms are defined in the ADA.

104.  Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

105.  The health of plaintiff's service dog was impaired due to Officer Harder's and Officer Mooney's willful and malicious refusal to permit plaintiff to administer the dog's daily medication.

106.  Plaintiff was deprived of her right to the service and accompaniment of her service dog pursuant to the ADA, by the willful, intentional and malicious acts of Officers Harder and Mooney and the failure of Chief Zikuski to ensure that his officers are adequately trained to accommodate, protect and uphold the rights of disabled citizens.

WHEREFORE, Plaintiff asks that this Honorable Court:

> a) Enter judgment against Officers HARDER and MOONEY and Chief Zikuski
>
> b) Award Plaintiff compensatory and punitive damages,
>
> c) Award attorneys' fees and costs, and
>
> d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT IX
### (State Law Claim for Intentional Infliction of Emotional Distress)

107.  Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

108.  Officers HARDER and MOONEY'S conduct was extreme and outrageous.

109.  HARDER and MOONEY intended to cause Plaintiff severe emotional distress, or knew that there was a high probability that their conduct would cause Plaintiff severe emotional distress.

110.  HARDER's and MOONEY'S conduct caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff asks that this Honorable Court:

14

a) Enter judgment against Officers Harder and Mooney, Capt. Chapman, Chief Zikuski

    b) Award compensatory and punitive damages,

    c) Award costs, and

    d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT X

### (State Law Claim for Battery)

111.  Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

112. Plaintiff was subjected to harmful and offensive physical contact upon her person by the intentional and malicious acts of Officer Harder and Officer Mooney.

113. The battery consisted of grabbing of clothing, twisting of arms, wrist and hands, violent and painful handcuffing and yanking/dragging/shaking plaintiff by arms and clothing.

114. Said acts of battery caused pain and suffering and permanent severe damage to plaintiff's wrists, greatly limiting plaintiff's use of her upper extremities and subjecting plaintiff to ongoing, nearly continuous pain.

WHEREFORE, Plaintiff asks that this Honorable Court:

    a) Enter judgment against Officers Harder and Mooney,

    b) Award Plaintiff compensatory and punitive damages,

    c) Award costs, and

    d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT XI
### State Law Claim: Mental Hygiene Law—abuse of process

115. Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

116. Defendant Officers Harder and Mooney willfully violated MHL § 9.41 and abused the process and authority granted under said provision by failing to have any reasonable cause to believe that an emergency, as required by that statute, existed or that plaintiff

was unable or unwilling to care for herself or was an imminent danger to herself or others.

117. Officers Harder and Mooney acted willfully, maliciously and with reckless

indifference to plaintiff's right to be free from unlawful deprivation of liberty.

118. Officer Harder abused the legal process for emergency civil commitment for

involuntary psychiatric evaluation under NY Mental Hygiene Law §9.41 by falsely

reporting that plaintiff engaged in dangerous behaviors and was mentally ill.

119. Officers Harder and Mooney misused the legal procedures designed to treat a patient

in a psychiatric crisis, for the illegal purpose of justifying the violence inflicted upon

plaintiff upon Harder's arrival at the scene and to retaliate against her protected speech.


COUNT XII
State Law Claim: Defamation

120. Plaintiff realleges each paragraph 1 through 70 as if fully set forth herein.

121. Officer Harder willfully violated plaintiff's right to privacy by loudly announcing

the purported reason for ambulance transport : "she's going to *behavioral*" , both in

plaintiff's neighborhood and in a public area of the hospital.

122. Officer Harder submitted a written statement as required by MHL § 9.41 that

indicated plaintiff was a danger to herself and others, appeared to be mentally ill and

required immediate psychiatric evaluation. Said writing has become a permanent part of

plaintiffs medical records that are available to medical service providers, staff, and

insurance personnel.

123. Said statements are defamatory per se and damage plaintiff's good reputation.

124. Harder knew the information was false, he knowingly and maliciously created the

16

damaging information and published it, both verbally and in writing, thus committing

slander and libel.

125. Officer Harder and Officer Mooney knowingly and maliciously created written

police reports, official public records, that are false and misleading and gravely impugn

the reputation of plaintiff.

WHEREFORE, Plaintiff asks that this Honorable Court:

      a) Enter judgment against Officers Harder and Mooney,

      b) Award Plaintiff compensatory and punitive damages,

      c) Award costs, and

      d) Award any further relief that this Honorable Court deems just and equitable.


### COUNT XIII
### State Law Claim NY Civil Rights Law Art.II §8
### and  Art. 4b §47b

126.  Plaintiff realleges paragraphs 1—70 as if fully set forth herein

127.  Plaintiff;s right pursuant to NY Civil Rights Law,  to be free from unreasonable

searches and seizures, has been violated by defendants.

128. The right to have a service dog in  Plaintiff's immediate custody, guaranteed by NY

Civil Rights Law Article 4B § 47b has been willfully violated by Officer Harder and

Officer Mooney.

129.  Chief Zikuski's and Captain Chapman's  failure to train, supervise, monitor,

investigate and discipline subordinates are causal factors in this civil rights deprivation

suffered by plaintiff.


WHEREFORE, Plaintiff asks that this Honorable Court:

      a) Enter judgment against Officers Harder and Mooney, Chapman and Zikuski

      b) Award Plaintiff compensatory and punitive damages,

c) Award costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT XIV
### State Law Claim: NY Executive Law Art.15 §296(14)

130. Plaintiff realleges paragraphs 1—70 as if fully set forth herein.

131. Defendants have violated NY Human Rights Law (as cited above) by refusal to accommodate the disabled plaintiff's right to be accompanied by her service dog.

132. Defendants have engaged in discriminatory conduct toward plaintiff in violation of

NY Executive Law Article 15 §296 (14).

WHEREFORE, Plaintiff asks that this Honorable Court:

    a) Enter judgment against Officers Harder and Mooney,Chief Zikuski and Captain
    Chapman

    b) Award Plaintiff compensatory and punitive damages,

    c) Award costs, and

    d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT XV
### State Law Claim: Trespass

133. Plaintiff realleges paragraphs 1—70 as if fully set forth herein.

134. Plaintiff has suffered an illegal intrusion upon her private property by Officers

Harder and Mooney on Sept. 29, 2009. Intrusion was egregious and extreme in that it

involved entry into a private home and violated plaintiff's fundamental privacy right.

135. Captain Chapman, a few days post Sept. 29, 2009, trespassed upon the private
property of plaintiff, without plaintiff's knowledge or permission.

136. Capt. Chapman willfully violated the privacy and property rights of plaintiff and
would have gone undetected but for a security detector on plaintiff's property.

18

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Officers Harder and Mooney, and Chapman

b) Award Plaintiff compensatory and punitive damages,

c) Award costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT XVI

### NY State Constitution Art.1§8 , §11, §12

137.  Plaintiff realleges paragraphs 1—70 as if fully set forth herein.

138. Defendants have violated plaintiff's rights to free speech, to be free from discrimination, and to be secured against against unreasonable searches and seizures, guaranteed by the NY State Constitution.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Officers Harder and Mooney, Captain Chapman and Chief Zikuski

b) Award Plaintiff compensatory and punitive damages,

c) Award costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT XVII

### (State Law Claim – *Respondeat Superior*)

139.  Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

140.  The acts of Defendant-Officers Harder and Mooney and Capt. John Chapman and Chief Joseph Zikuski  described in the state law claims above were done in the performance of their duty, were willful and wanton and committed in the scope of their employment.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant CITY OF BINGHAMTON to pay any judgment entered in this case arising from the actions of Defendant-Officers HARDER and MOONEY, Captain CHAPMAN and Chief ZIKUSKI described in the state law claims above.

## REQUEST for EQUITABLE RELIEF

141.  Based on the facts alleged in this complaint, Plaintiff requests this Court to provide a remedy in equity whereby a judgment and order would be entered in this matter, finding that Defendant improperly and unnecessarily invoked Mental Hygiene Law §9.41 against the Plaintiff and thus the Plaintiff's detention and emergency evaluation pursuant to that provision were illegally procured by fraud, error or falsified documents.  Any records in the control or possession of the Defendant that pertain to said illegal detention shall be sealed.


## MUNICIPAL LAW §50 Notice of Claim

A Notice of Claim pursuant to NY Municipal Law was served on December 23, 2009 in compliance with the requirements of § 50 e.


Dated   April 30, 2012                                        Respectfully submitted,

                                        *Cecelia Nicholas*

                                        Cecilia Nicholas, Plaintiff

                                        52 Lathrop Ave

                                        Binghamton, NY 13905

                                        607-722-8889

`UNITED STATES DISTRICT COURT
NORTHERN DISTRICT NEW YORK

---

CECILIA  NICHOLAS,
               Plaintiff

     vs

                 Civil Index No: 3:10-CV-1565
                 (TJM/DEP)

*Affidavit of Service*

CITY OF BINGHAMTON NEW YORK,
POLICE OFFICERS CHARLES D. HARDER,
JAMES MOONEY, CAPT. JOHN CHAPMAN,
CHIEF JOSEPH ZIKUSKI,
               Defendants

---

Bess Nicholas,  residing at  52 Lathrop Ave. Binghamton, NY 13905,   being duly sworn,
         deposes and says:
I am over 18 years of age and am not a party to this action.

On  <u>May 18, 2012</u>   I served the within papers:
       (date)

             <u>SECOND AMENDED COMPLAINT</u>
                ( Description of document(s)

By personal service on the following:

Brian Seachrist, Esq                       Patricia Cummings,Esq.
Corporation Counsel Office              Leonard & Cummings
Binghamton City Hall 5th floor          84 Court St.   Suite  402
38 Hawley St.                           Binghamton, NY  13901
Binghamton, NY  13901

By delivering a true copy of the aforesaid documents personally to the addresses noted above;
deponent knew said person/corporation so served to be the person/corporation described or their
authorized agent

Sworn to before me this
<u>18</u>  day of <u>May 2012</u>

_Cecelia Nicholas_
Notary Public                                 _Bess Nicholas_
                                            Bess Nicholas

CECILIA NICHOLAS
Notary Public, State of New York
Residing in Broome County
Registration No. 02NI5026821
Commission Expires April 25, 2014